UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL ACTION NO. 14-10363-RGS

UNITED STATES

v.

CARLA R.CONIGLIARO, and
DOUGLAS A. CONIGLIARO

MEMORANDUM AND ORDER ON
DEFENDANTS' MOTION TO DISMISS
AND ORDER SETTING CASE FOR TRIAL

January 29, 2016

STEARNS, D.J.

Defendants Carla and Douglas Conigliaro are charged in a multi-defendant indictment involving the now defunct New England Compounding Center (NECC).  The Conigliaros are not accused of wrongdoing with respect to the contamination of steroid medications at NECC that is alleged to have caused a national outbreak of fungal meningitis.  Rather, they are charged with "structuring" $570,000 in bank withdrawals to avoid currency transaction reporting requirements and for transferring sums of money between personal bank accounts in defiance of an order of the Bankruptcy Court (Boroff,

J.).   The Conigliaros connection to NECC arises solely from Carla Conigliaro's status as an NECC shareholder.[1]

The Conigliaros now move to dismiss the indictments. For the reasons stated at the January 28, 2016 hearing on the motion, as briefly recapitulated here, the motion to dismiss the structuring counts will be DENIED.   The motion to dismiss the contempt charges will be ALLOWED.

**Structuring**

Title 31, United States Code, Section 5324(a)(3), makes it a crime to knowingly structure a cash transaction for the purpose of evading the currency transaction reporting requirements of Title 31, United States Code, Section 5313(a) and its associated regulations.  The term "structure" typically refers to the breaking down of a sum of cash into amounts of less than $10,000 to avoid triggering the obligation of federally-insured financial institutions to report to FinCEN, a U.S. Treasury agency, daily cash transactions, whether singly or in the aggregate, that exceed that amount.   A financial institution for purposes of the statute is treated as a single entity that includes all of a bank's branch offices.

---

[1] The government acknowledges that the Conigliaros had no role in the day-to-day operations of NECC as evidenced by the agreement to sever the Conigliaros from the main group of defendants who were NECC managers and employees.

The Conigliaros are charged with conspiring to evade the reporting requirements by making 504 cash withdrawals totaling $389,680 from Middlesex Savings Bank between September 2010 and January 2013; 148 withdrawals totaling $111,103 from SunTrust Bank between February 2013 and December 2013; and 124 withdrawals totaling $71,558 from TD Bank between February 2013 and March 2014.   They are also charged with three substantive violations of Section 5342(a) founded separately on the withdrawals from Middlesex Savings Bank, SunTrust Bank, and TD Bank.

The motion to dismiss the structuring counts pursuant to Fed. R. Crim. P. 7(c) and/or Fed. R. Crim. P. 12(b)(3), is based on a purported failure of the government to allege an offense.  The Conigliaros argue that no facts recited in the indictment tend to prove that they acted with criminal intent, as for example, in executing a scheme of money laundering or theft of creditors' funds.  The argument overstates the government's pleading and proof requirements.   The Section 5324(a)(3) crime is complete with the attempt (successful or not) to evade the reporting requirements.  *See United States v. Souza*, 749 F.3d 74, 84 (1st Cir. 2014).  As the court pointed out at the hearing, this could be done for a facially innocent (as well as a nefarious) reason,

such as paranoia about any government acquisition of personal financial data. The government must, of course, ultimately prove an intent to evade (whatever the motive), but this is a matter of disputed fact that the court cannot resolve on a motion to dismiss. At this stage of the proceedings, the government (or more accurately, the Grand Jury), need only correctly state the elements of the offense. *Hamling v. United States*, 418 U.S. 87, 117 (1974). It has here.

### Contempt

The Conigliaros are also charged with eighteen separate counts of criminal contempt based on alleged violations of an Order of the Bankruptcy Judge Boroff entered on January 28, 2013, restraining them from "*transferring*, encumbering, assigning, pledging, mortgaging, or spending any assets . . . other than as necessary for ordinary living or legal-representation expenses, except by leave of this Court." *Moore v. Cadden,* No. 13-1040 (Bankr. D. Mass. 2013), Dkt. #22; #51. The government alleges that the Conigliaros violated the order by transferring large sums of money from one family bank account to another (a total of some $19.8 million in different combinations) in February and March of 2013. There is no allegation by the government (or by the Bankruptcy Trustee) that any of the shifts

in funds were undertaken to conceal assets from the Bankruptcy Court. Nor is there any allegation that the shifts in accounts resulted in any material change in the ownership of the funds.  Finally, it is undisputed that Carla Conigliaro fully disclosed her assets (including these accounts) to the Trustee and paid the full amount ($24 million) assessed by the Trustee as her contribution to the reparations fund created for the victims of the meningitis outbreak.[1]

The government's position is that the meaning of the word "transfer" is a mixed question of fact and law that should be reserved for the jury.  I disagree.  The meaning of the word "transfer" in the context of this case is a pure issue of law appropriate for the court to resolve on a motion to dismiss.  *See United States v. Covington*, 395 U.S. 57, 60-61 (1969).  It is true, as the government argues, that the standard dictionary definition of transfer has two meanings, the first to move "something from one place to another," the second, "the act or process of giving the property or rights of one person to another person." www.merrian-webster.com/dictionary/transfer (last visited

---

[1] The Trustee has expressed no dissatisfaction with Carla Conigliaro's cooperation, nor was Judge Boroff asked to enter a contempt citation.

January 29, 2016). The Bankruptcy Code, however, defines a transfer exclusively in the second sense as an alienation of property rights.

> The term transfer means—
>
> (A)    the creation of lien;
> (B)    the retention of title as a security interest;
> (C)    the foreclosure of a debtor's equity or redemption; or
> (D)    each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with—
> > (i)    property; or
> > (ii)    an interest in property.

11 U.S.C. § 101(54).

It strains credulity to believe that a Bankruptcy Judge would have used the term "transfer" in any sense other than the one that the Bankruptcy Code gives it. It is true, as the government argues, that in Judge Boroff's Order, following the word "transfer", he restrains the Conigliaros from "encumbering, assigning, pledging, mortgaging, or spending any assets" and that these latter terms are not defined in section 101 of the Bankruptcy Code. But it does not follow that he was therefore using the term "transfer" in its broader sense. Rather, the fact that each of these words are synonyms for acts of alienation of property reinforces the presumption that he meant "transfer" to mean exactly what the Bankruptcy Code says it means.[2]

ORDER

---

[2] To the extent that there is any lingering ambiguity (which in my view there is not), in a contempt proceeding, the Conigliaros must be given the benefit of the doubt and the ambiguity is to be construed in their favor. *NBA Props. v. Gold*, 895 F.2dv30, 32 (1st Cir. 1990).

For the foregoing reasons, the motion to dismiss the structuring counts (Counts 128-131) is <u>DENIED</u>.  The motion to dismiss the contempt charges (Counts 110-127) is <u>ALLOWED</u>.  Trial of the structuring Counts will commence at 9:00 a.m., Monday April 11, 2016, in Courtroom 21.  The Clerk will issue the appropriate Order setting the case for trial.

SO ORDERED.

/s/ Richard G. Stearns
_____
UNITED STATES DISTRICT JUDGE