```
            UNITED STATES DISTRICT COURT
              DISTRICT OF MASSACHUSETTS
```

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. No. 14-10363-RGS |
| | ) | |
| Plaintiff | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| MICHELLE THOMAS, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**DEFENDANT THOMAS'S REPLY MEMORANDUM TO GOVERNMENT OPPOSITION TO HER POST TRIAL MOTION FOR JUDGMENT OF ACQUITTAL, F.R.Cr.P. RULE 29, AND MOTION FOR NEW TRIAL**
(Leave to File Granted on June 7, 2019)

COMES NOW DEFENDANT, MICHELLE THOMAS, by and through her attorney of record and hereby, and respectfully, replies to the Government Opposition with the following memorandum. Without waiving each of the arguments raised in her motion, Ms. THOMAS will focus on two significant issues: 1) the failure of evidence showing she had knowledge of, and wilfully joined in the "longstanding scheme" to defraud regulators, and 2) the government's misleading/misstatement of fact as to the evidence specifically against Ms. THOMAS.

**I. THE GOVERNMENT FAILED TO CHARGE BY INDICTMENT NOR PRESENT ANY EVIDENCE THAT MS. THOMAS ENGAGED IN A SCHEME TO DEFRAUD "REGULATORS" NOR EVIDENCE, BEYOND A REASONABLE DOUBT, THAT SHE DID NOT ACT IN GOOD FAITH.**

In its opposition, page 11, the Government in a conclusory and illogical fashion, reminiscent of the Chesire Cat in Alice in

1

Wonderland, suggests that "NECC engaged in a long-running and systematic fraud on its regulators and that Ms. Chin and Ms. Thomas knowingly and willingly dispensed drugs pursuant to fraudulent prescriptions in support of this scheme." According to the government, "*this evidence* is []sufficient to disprove that Ms. Chin and Ms. Thomas acted in good faith—because intent to defraud is "essentially the opposite of good faith,"(emphasis added). [1]

In Section 6 of the opposition, page 13, the government repeats its mantra concerning NECC's scheme to defraud and lumps Ms. THOMAS and Ms. Chin into the mix without identifying *any* evidence that Ms. THOMAS joined in the scheme: "NECC systematically defrauded regulators by engaging in various schemes to create the illusion that it operated as a legitimate pharmacy—dispensing drugs pursuant to legitimate, patient-specific prescriptions—when, in fact, NECC made and sold drugs in bulk. *Defendants'* argument that they worked at NECC and supported this illicit scheme[2] by filling prescriptions for

---

[1] See e.g. People v. Martinez, no. G044885 (Cal. App., 2012) *unpublished* "This circular reasoning amounts to no more than speculation without evidence." In literary terms, [the expert's] explanation resembled the Cheshire Cat's circular reasoning in Alice in Wonderland. When the cat opined, "We're all mad here. I'm mad. You're mad," Alice objected, "How do you know I'm mad?" "You must be," rejoined the cat with a mad grin, "or you wouldn't have come here." The narrator informs the reader, "Alice didn't think that proved it at all," and the same is true here.In literary terms, an appellant's explanation resembled the Cheshire Cat's circular reasoning in Alice in Wonderland.]

[2] Defendants here made no such argument; they have denied knowledge of, nor participation in, any such scheme.

obviously fictitious patients—but themselves acted in good faith and without an intent to defraud and mislead—beggars belief..." (emphasis added).

In support of its argument concerning intent to defraud, the government discusses the testimony of Ronzio, who had no contact or discussions with Ms. THOMAS, and Cadden's directions to individuals from the *confirming and sales departments* to sidestep the patient name requirement. Gov opposition at 13-14. Completely missing from this argument, or the testimony or evidence at trial, is that Ms. THOMAS was ever made aware of this "scheme." No evidence was presented that she ever had any discussions with Cadden, or Ronzio, or anyone concerning what the specific regulatory requirements of this compounding pharmacy were. The fact that she had meetings with Cadden, and brought other issues at the lab to his attention, provides no such evidence. At best, it is pure speculation that Ms. THOMAS was aware of, or knowingly participated in any such scheme.

The government's argument that intent to defraud can be inferred by "a reasonable juror" based on evidence that Ms. THOMAS was "a licensed pharmacist, who observes a prescription drug order for a patient named Filet O'Fish, consults with another pharmacist, and dispenses the drug anyway, [shows she] had the knowledge and intent to participate in the fraudulent scheme," Gov. Opposition at 16, is completely misplaced. The government's argument completely ignores the evidence that shows

3

that, following Ms THOMAS bringing the fake name to the attention of her supervisors, the patient names were corrected with real names. See Def. Ex. 13-15, TR 4/29/19 at 128-130.

**II. THE GOVERNMENT PRESENTS A MISLEADING AND INACCURATE SUMMARY OF THE EVIDENCE IN SUPPORT OF ITS ARGUMENT OF THAT MS. THOMAS INTENT TO DEFRAUD WAS PROVEN BEYOND A REASONABLE DOUBT**

The government argues in its opposition that "*hundreds* of other similar orders that were uncharged but sent out using fake names, the names of doctors or customer employees, or the names of the ordering healthcare facilities[]  Exh. 86 [provides] evidence of additional illegal conduct [that] further corroborates the fact that the "*Defendants*" acted with the knowledge and intent to defraud when they dispensed drugs without prescriptions." Gov. Opposition at 16.  The simple, but significant, problem with this argument is that it is factually inaccurate.  There was absolutely NO evidence presented that Ms. THOMAS sent out orders with fake names other than the two charged offenses. The pedagogical chart[3] compiled by government as summary evidence pursuant to F.R.E. Rule 1006 contained 90 plus pages of the activities of several employees of NECC, unrelated in any way to Ms. THOMAS, shipping orders not only during the time Ms. THOMAS was employed but also before and after.   In the

---

[3] Ms. THOMAS continues her objection that the government's chart was not a proper summary of the evidence under Rule 1006, but rather, a pedagogical device that unfairly created the impression that disputed facts have been conclusively established or that inferences have been directly proved. See United States v. Drougas, 748 F.2d 8, 25 (1st Cir. 1984).

chart, the only activity of Ms. THOMAS, other than the charged offenses, includes a relatively small number of incidents of her sending out orders to medical facilities who apparently had contracts with NECC.[4] The fundamental misstatement of fact that suggests that Ms. THOMAS sent out "hundreds" of orders with fake names should give rise to the overriding question: was the government's evidence submitted at trial specific to Ms. THOMAS as an individual or was it generalized evidence of the uncharged scheme leading to the improper assumption of "guilt by association?" The clear answer is the latter. If the government itself can't separate defendants as to the specific wrongful conduct involved, it is no wonder that the jury did not as well.

Lastly, Ms. THOMAS adopts herein, as though set forth at length, each of the arguments of counsel for co-defendant, KATHY CHIN.

WHEREFORE, Ms. THOMAS, respectfully requests this Honorable Court, grant the judgment of acquittal, or, in the alternative thereto, grant a new trial.

///

///

---

[4] Other than Penta's opinion that such contracts violate Massachusetts' pharmacy professional regulations, no evidence was presented that these types of contracts with medical facilities were unlawful.

Date: June 6, 2019                    Respectfully submitted,

                                      BOURBEAU & BONILLA, LLP

                                      *S/ Michael C. Bourbeau*
                                      MICHAEL C. BOURBEAU

                                      Attorney for Defendant
                                      80 Washington St., Bldg. K
                                      Norwell, MA 02061
                                      (617) 350-6565

Certificate of Service
I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on the above date.
*/s/ Michael C. Bourbeau*