Carol L. Thomas, M.Ed.
14 Cedar St
Johnston, RI 02919
(401) 559-5089
carol120454@yahoo.com


Judge Richard G. Sterns
c/o John Joseph Moakley
United States Courthouse
1 Courthouse Way
Boston, MA

Oct. 9, 2019

RE: Indictment and Conviction of Michelle L. Thomas Caetano in the NE Compounding Center case. Repeal Hearing date: Oct. 18, 2019.


Dear Judge Sterns:

I am writing this letter in regards to, and on behalf of, Michelle Thomas Caetano, as a character reference. I have known Michelle all her life, since birth. I realize that some may believe that due to my position as her parent, I would not be able to be objective, but I will approach this subject as I would if she were one of my students, that is to say, as objectively as possible. Be that as it may, I believe that the closeness and the length of our relationship gives me a perspective that is unique and different from all the other people who have known her.

I will give a little information about my background, for clarification: I hold a BA in Biology/Secondary Education from Rhode Island College in Providence, RI. I also hold a Masters' Degree in Special Education from Lesley University in Cambridge, MA. I have worked with many young people in my many years as a professional educator. I have encountered all sorts of students, with all sorts of ability levels, and all sorts of personalities. I have worked with every grade level, including junior college.

I actually homeschooled Michelle in the 7th and 8th grades. This was at her request, because the school she was attending had dropped their gifted program, and we both felt that she needed more challenges than her school could provide. For me, and for all her other teachers, throughout her school years, she was a model student. Her behavior was always excellent. She has always tried to do the right thing, both in her professional and personal life.

As a young child (age 10) she became fascinated with the world of medicine. At the time, I was working as a medical lab technologist in a private medical laboratory located in an Oncologist's office. (When I graduated from college in 1978, teaching jobs were extremely hard to find, so I worked in the medical lab field for thirteen years, until 1991) I used to bring Michelle to my lab on Bring Your Daughter to Work days and on other school vacation days. Watching me work with patients, she decided then to become a doctor. She has always had a strong desire to help other people. Later, in high school, she decided to pursue a pharmacy degree and applied to and was accepted into the six year pharmacy program at the University of RI. This program requires excellent grades to get into; it is very

competitive. Michelle was awarded a Presidential Scholarship by the University, because of her good grades. During her time there at URI, she tutored many of her fellow students and supported them academically through this challenging and difficult program, making the difference for some of them of passing or not passing their courses. She did not receive any monetary compensation for this work. She did it out of friendship and caring for her fellow students.

She received her Doctorate of Pharmacy (Pharm. D) degree in 2007 and spent the next two years in clinical internships, first at Union Hospital, then at Johns Hopkins University Hospital, both located in Baltimore, MD. Johns Hopkins then hired her full time. After two more years of working for them, she decided to move back to New England to get married and pursue an academic career at the University of RI. Her success in tutoring and mentoring her fellow students led her to realize her skill as a teacher, and that she could make a difference in the training of future pharmacists. Through the ripple effect, in turn, her students could make a positive difference in the lives of many patients.

The job she had at the NE Compounding Center was to be only a temporary job, to fill in for another pharmacist who was on maternity leave. It was to be only for a few months. Michelle was waiting to see if she would be approved for the position at URI. In the meantime, she wanted to earn money to help with the expenses of her upcoming wedding, which took place in October 2012.

If she had had any indication that the NE Compounding Center was conducting their business in an improper, dangerous, and unethical manner, she would never have accepted the job with them. It would have been totally against her sense of professional as well as personal ethics. There were no indications of any problems, since their licensing from the MA Board of Pharmacy was intact and current. She was not informed of any violations or adverse results found on their recent inspections.. All seemed well on the surface. When the incidents that led to her indictment happened, she had only been there about two weeks, and was still in the process of being trained in the company's procedures. She did not have any real authority in this organization at the time, as she was still a trainee. She only worked in their shipping department, never in their lab, and her department was not the one responsible for flagging questionable names on prescriptions and correcting them with the providers. This company had a VERY specific chain of command. On a couple of occasions, when she did question something, she was not taken seriously, since she was not part of that department. I am well aware of all the events that occurred in this case, since I sat through her trial in April 2019 every day it took place, and I took many detailed notes for future reference, which I have reviewed several times since.

The two times when she questioned things, this information was twisted around and used against her in the trial. The two government officials, who arrived at her home unannounced to ask her questions (without her attorney present) seemed to believe that she had known about the unethical, negligent practices that were going on there at NECC and, by her telling them that she had seen no problems, had gone along with it. This was also used against her. There was no way that this was possible, that she could have known, either while she was there, or afterwards. She had absolutely no inside information about what had been going on there at NECC. When the problems with NECC surfaced, she already had left there, and had no more contact with anyone there. She found out about the case from the news on TV, along with the rest of us. She was appalled at the way that NECC had conducted their business, and the pain, suffering, and death of many patients as a result of their negligence.

After the news broke, and the indictments were handed down, she was totally shocked, as were I and her father and the rest of the family. Michelle's job, her dream job at the University of RI, was severely curtailed. She was no longer allowed to teach students. She did administrative work for URI and donated her spare time to a local free clinic as a pharmacist. She was still trying to make a positive

difference in the world. She did her best to weather the storm, as did we. This nightmare has dragged on now for seven long years, with no end in sight. After the trial (which I have many reasons to believe was badly flawed, only a couple of which I have mentioned here) and the guilty verdict was handed down, Michelle was immediately terminated from her position at URI. About a week later, the State of RI Department of Health stripped her of her pharmacy license. Chances are she will never be able to work as a pharmacist or teach in this field again for the rest of her life. All her hard work, effort, accomplishments, dreams, reputation, etc, are down the drain, because of the bad fortune of being in the wrong place at the wrong time, and becoming collateral damage as a result. She has suffered extreme permanent loss and will for the rest of her life. The effects of being found guilty of a felony will follow her forever. This is a permanent punishment for the rest of her life. Her name has been blackened in the media, and this adverse information will have an eternal life on the Internet.

The psychological damage these events have caused Michelle is severe. She reminds me of someone who went to war and came back a different person. As a professional, who has worked with and taught many young people with psychological issues due to severe trauma, I believe she suffers from PTSD. She has changed, and will probably never be the same as she was before. The young woman who I carried, gave birth to, loved, taught, mentored, and raised to adulthood is no more. Her physical health has also suffered greatly as a result.

As a professional educator, I feel that her loss to the medical profession is a grievous loss to the world, a tremendous waste of talent which could have made a positive difference in the lives of many. This is now lost forever. As a parent, I feel a loss that cannot be repaired. For all intents and purposes, I have lost my child.

Since I attended the trial, and saw you perform your job in a very professional manner, I believe that you are an intelligent and wise individual, and that you will judge the best in this situation. I hope you will take this information I have presented, and other positive information presented by others, into consideration when rendering your decision. Thank you very much for your time and effort.

Sincerely,

*Carol L. Thomas, M. Ed.*

Carol L. Thomas, M.Ed.